UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAMIEN McINNIS,

                              Plaintiff,

          v.

CHEMUNG CO. DISTRICT ATTORNEY'S OFFICE,
CHEMUNG CO. SUPERIOR COURT, HONORABLE
PETER C.  BUCKLEY, ELMIRA CITY POLICE DEPT.
PATROL DIV., SHERIFF CHEMUNG COUNTY,
CHEMUNG COUNTY, CITY OF ELMIRA,
WILLIAM BRESSER, PATRICK GRIFFEN,
MATTHEW LAMBERT, RICHARD E.  WEED,
MICHAEL SCREIBER, JOSEPH KAIN,
JOHN DOE A/K/A INVESTIGATOR CANALI,
JOHN DOE A/K/A INVESTIGATOR ORDWAY,
CHRISTOPHER J. MOSS, DOE JOHN, and
SUPERINTENDENT OF CAYUGA CORRECTIONAL
FACILITY,

                            Defendants.

**REPORT**
**and**
**RECOMMENDATION**

**10-CV-00026S(F)**

_____

APPEARANCES:          BETZJITOMER & BAXTER
                         Attorneys for Plaintiff
                         SUSAN M.  BETZJITOMIR, of Counsel
                         50 Liberty Street
                         Bath, New York 14810

                         DAVIDSON & O'MARA, P.C.
                         Attorneys for Defendants Chemung County and Moss
                         BRYAN J.  MAGGS, of Counsel
                         243 Lake Street
                         Elmira, New York 14901

                         LIPPMAN O'CONNOR
                         Attorneys for Defendants City of Elmira, Griffen,
                          Weed, Kain, and Canali
                         GERARD E.  O'CONNOR, of Counsel
                         300 Olympic Towers
                         300 Pearl Street
                         Buffalo, New York 14202

ERIC T.  SCHNEIDERMAN
New York State Attorney General
Attorney for Defendants Lambert and Screiber
KIM S.  MURPHY
Assistant New York Attorney General, of Counsel
Main Place Tower
Suite 300A
Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M.  Skretny on

July 21, 2011, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

four dispositive motions including two motions for summary judgment filed May 6, 2011

(Doc. No. 18), by Defendants City of Elmira, Griffin, Investigator Canali, Kain, and

Weed, and May 13, 2011 (Doc. No. 19), by Defendant Chemung County, an amended

motion for summary judgment, filed July 27, 2011 (Doc. No. 23) by Defendants

Chemung County and Moss, and a motion to dismiss filed August 12, 2011 (Doc. No.

27), by Defendants Lambert and Schreiber.[1]

## BACKGROUND

Plaintiff Damien McInnis ("Plaintiff" or "McInnis"), then proceeding *pro se*,

commenced this civil rights action ("first action") on January 11, 2010, alleging violations

of his civil rights based on an alleged false arrest and criminal prosecution on March 19,

---

[1] Although denominated in the Second Amended Complaint as "Screiber," because this
Defendant refers to himself as "Schreiber," which the court presumes is correct.  The caption will be
amended accordingly if necessary.

2009 on New York State class "B" felony charges for three sales of a controlled

substance, charges on which Plaintiff was subsequently arrested after the alleged

sales.  Plaintiff commenced in this court two additional civil rights actions pertaining to

the same arrest and prosecution, including *McInnis v. Elmira Police Dept. Narc Division*,

10-CV-188(F) ("second action"), and *McInnis v. Elmira Police Department*, 10-CV-

308S(F) ("third action").  Named as defendants in the original complaint filed in the first

action were Chemung County District Attorney's Office ("Chemung D.A."), Chemung

County Superior Court ("Superior Court"), Elmira City Police Department Narcotics

Division ("Police Narcotics Division"), Honorable Peter C. Buckley, Chemung County

Court Judge ("Judge Buckley"), Sheriff of Chemung County ("the Sheriff"), and Elmira

City Police Department Patrol Division ("Police Patrol Division").  The same defendants

named in the original complaint filed in the first action were also sued as defendants in

the second action.  Named as defendants in the third action were Elmira Police

Department ("the Police"), and Police Narcotics Division.  Because the complaints filed

in all three actions made substantially similar allegations against the same defendants,

District Judge Richard J. Arcara, by Order filed September 23, 2010 (Doc. No. 3)

("September 23, 2010 Order"), consolidated the first, second, and third actions, with all

papers in the second and third actions to be filed in the instant action, the second

action's complaint deemed the "First Supplemental Complaint" (Doc. No. 4), and the

third action's complaint deemed the "Second Supplemental Complaint" (Doc. No. 5).

Upon dismissing all claims against the Elmira Police Department, including the Police

Narcotics and Patrol Divisions, Judge Arcara explained that the claims could be

redirected against the municipality of which the Police Department is an administrative

3

arm, September 23, 2010 Order at 13-14, but then misnamed Chemung County ("the

County") as a defendant.  *Id*. at 16-17, 22.  Judge Arcara also dismissed with prejudice

the claims against Chemung County Superior Court, Judge Buckley,[2] the Chemung

County D.A., Police Narcotics Division, and Police Patrol Division, and the Sheriff,

ordering the termination of such parties as defendants.  *Id*. at 22.  Further, Plaintiff's

defamation claims were dismissed in their entirety with prejudice.  *Id*.  Finally, Judge

Arcara granted Plaintiff thirty days to file an amended complaint to add as individual

defendants any Chemung County employees or officials alleged to have violated

Plaintiff's rights, although Plaintiff was specifically directed not to assert new claims

against those defendants whose dismissal from this action was ordered therein.  *Id*. at

19.

On October 22, 2010, Plaintiff, now represented by counsel, filed the Amended

Complaint (Doc. No. 7) ("Amended Complaint"), naming as defendants only Chemung

County and City of Elmira, against whom Plaintiff asserted civil rights claims based on

false arrest and imprisonment, and a cause of action for "disparate impact."  In a

Decision and Order filed November 17, 2010 (Doc. No. 9) ("November 17, 2010 D&O"),

Judge Arcara held that insofar as the September 23, 2010 Order "determined that

plaintiff's claims against the Elmira Police Department should be dismissed, but that

such claims should be redirected as against Chemung County, and whereas the Court

has clarified herein that the claims against the Elmira Police Department should instead

---

[2] Judge Arcara also clarified that although identified by Plaintiff as "Chemung County Superior
Court," the court is correctly referred to a "Chemung County Court," and Judge Buckley is a "Chemung
County Court Judge."  September 23, 2010 Order at 8, n. 5.

by redirected as against the City of Elmira, the Court finds that plaintiff's claims against the City of Elmira may proceed."  November 17, 2010 D&O at 3.

Answers to the Amended Complaint were filed by the City of Elmira on November 19, 2010 (Doc. No. 10), and by Chemung County on December 14, 2010 (Doc. No. 11).

On April 5, 2011, Plaintiff filed the Second Amended Complaint (Doc. No. 16) ("Second Amended Complaint"),[3] naming as Defendants Chemung County ("the County"), The City of Elmira ("the City"), State of New York ("the State"), David Topping ("Topping"), City Police Sergeant William Bresser ("Bresser"), City Police Officer Patrick Griffen ("Griffen"), Matthew Lambert ("Lambert"), City Police Officer Richard E. Weed ("Weed"), Michael Schreiber ("Schreiber"), City Police Captain Joseph Kain ("Captain Kain"), City Police Investigator Canali ("Canali"), Investigator Ordway ("Ordway"), John Doe, Sheriff Christopher J. Moss ("the Sheriff"), and the Superintendent of Cayuga Correctional Facility ("C.F. Superintendent").  Plaintiff asserts as grounds for relief four violations of his federally protected civil rights including (1) unlawful arrest and imprisonment, Second Amended Complaint ¶¶ 53-55 ("First Claim"); disparate impact, *id.* ¶¶ 56-57 ("Second Claim"); malicious prosecution, *id.* ¶¶ 58-59 ("Third Claim"); and excessive force, *id.* ¶ 60 ("Fourth Claim").  Plaintiff also requests an award of attorney's fees under Title VII, 42 U.S.C. § 2000e-5(k) ("Title VII"), and asserts that in addition to

---

[3] Although the court's February 8, 2011 Scheduling Order (Doc. No. 15) set April 8, 2011 as the deadline for filing motions to join parties or amend pleadings, Plaintiff did not move, as required, Fed.R.Civ.P. 16(b), to enlarge the period within which to move pursuant to Fed.R.Civ.P. 15(a)(1)(B), for leave to file the Second Amended Complaint.  No Defendant, however, has objected to Plaintiff's filing of the Second Amended Complaint without first obtaining leave of the court, and the court construes Defendants' failure to object to Plaintiff's filing of the Second Amended Complaint without leave of the court as acquiescing in such filing.

federal question jurisdiction based on the assertion of federal civil rights claims, pursuant to 42 U.S.C. § 1983 and Title VII, there is jurisdiction in this court arising from the status of the United States as a signatory or ratifying party to several international treaties. *Id.* ¶¶ 3-7.  To date, Defendants Bresser, Topping, Ordway, and the C.F. Superintendent have yet to appear, and the record does not reveal whether any of these Defendants, including Bresser, Topping, Ordway, and the C.F. Superintendent, were ever served in this action.  As such, these named defendants are not parties.  Nor does the record indicate with which law enforcement agency Defendants Topping and Ordway are employed.

On May 6, 2011, Defendants City, Griffin, Canali, Captain Kain and Weed (together, "City Defendants"), filed a motion for summary judgment on the First, Second and Third Claims, and to dismiss the Fourth Claim for failure to state a claim (Doc. No. 18) ("City Defendants' Motion").  The City Defendants' Motion is supported by the attached Affidavit of Gerard E. O'Connor, Esq. ("O'Connor") in Support of City Defendants' Motion for Summary Judgment and Motion to Dismiss ("O'Connor Affidavit"), exhibits A through D ("City Defendants' Exh(s). __"), and a Memorandum of Law ("City Defendants' Memorandum").  On May 13, 2011, the County filed a motion seeking summary judgment on the First, Second, and Third Claims, and dismissal of the Fourth Claim for failure to state a claim (Doc. No. 19) ("County's Motion").  County's Motion is supported by the attached Affidavit of Bryan J. Maggs, Esq. ("Maggs") ("Maggs Affidavit"), and exhibits A and B ("County's Exh(s). __").

On June 30, 2011, Plaintiff filed the Attorney Affidavit of Susan BetzJitomir, Esq. ("BetzJitomir"), in Answer to Two [*sic*] Summary Judgment and Dismissal Motions Filed

5/6/11 and 5/13/11 (Doc. No. 21) ("Plaintiff's Summary Judgment Response"), attaching as unnumbered exhibits copies of several other documents filed in this action.  On July 27, 2011, County Defendants filed an Amended Notice of Motion (Doc. No. 23), indicating the County's Motion was now to be considered as brought by the County and Chemung County Sheriff Christopher J. Moss ("the Sheriff") (together, "County Defendants"), whom the Second Amended Complaint added as a Defendant ("County Defendants' Motion").  The County Defendants did not file any papers in support of the Amended County Notice of Motion.

On August 12, 2011, Defendants New York State Police Matthew Lambert ("Lambert"), and Michael Schreiber ("Schreiber") (together, "State Defendants"), filed a Motion to Dismiss the Complaint (Doc. No. 27) ("State Defendants' Motion"), and a Memorandum of Law in Support of Defendants Lambert's and Schreiber's Motion to Dismiss (Doc. No. 28) ("State Defendants' Memorandum").  On August 29, 2011, Plaintiff filed the Attorney Affirmation of BetzJitomir in Answer to Two [*sic*] Summary Judgment and Dismissal Motions Filed (Doc. No. 30) ("Plaintiff's Response to State Defendants' Motion").  On September 21, 2011, State Defendants filed in further support of State Defendants' Motion the Declaration of Assistant New York Attorney General Kim S. Murphy (Doc. No. 33) ("Murphy Declaration").  Oral argument was deemed unnecessary.

Based on the following, City Defendants' Motion (Doc. No. 18) should be GRANTED; County's Motion (Doc. No. 19), should be DISMISSED as moot; County Defendants' Motion (Doc. No. 23), should be GRANTED; State Defendants' Motion (Doc. No. 27), should be GRANTED; and the court should, sua sponte, dismiss the

action against the non-moving named defendants based on Plaintiff's failure to timely effect service.  The Clerk of the Court should be directed to close the file.

## FACTS[4]

At all times relevant to this action, Plaintiff Damien McInnis ("Plaintiff" or "McInnis"), an African-American male, owned a barbershop, Universal Cuts ("the barbershop"), with two others, located in Elmira, New York ("Elmira"), in Chemung County.  On February 26, 2009, the Chemung County Grand Jury returned Indictment No. 2009-72 ("the Indictment"), charging Plaintiff with selling a controlled substance, cocaine, a class "B" felony, on January 21, 2009, January 26, 2009, and February 9, 2009.  The alleged sales were "controlled buys" made by one Malcolm Madison ("Madison"), working as a confidential informant ("C.I.") with the Elmira Police Department ("the Police"), and the New York State Police ("the State Police").  Prior to each of the three controlled buys, unspecified undercover law enforcement officers provided Madison with a recording device and transmitter ("recording device and wire") to wear, as well as cash, the serial numbers of which had been recorded to enable law enforcement officers to trace the money Madison allegedly gave Plaintiff in return for the cocaine.

On January 21, 2009, Elmira Police Sergeant William Bresser ("Bresser"), acting on the suggestion of Investigator Ward from Steuben County, accepted Madison's offer to, as a C.I., target Plaintiff for investigation as a possible source of illegal drug

---

[4] Taken from the pleadings and motion papers filed in this action.

trafficking, despite Bresser's own lack of any knowledge or belief that Plaintiff was involved in drug trafficking.  Before Madison drove to Plaintiff's barbershop, Bresser installed a hidden recording device and wire on Madison, and searched Madison's person, but not Madison's body cavities, for drugs.  Elmira Police Officer Patrick Griffen ("Griffen"), searched the "reachable" areas of Madison's vehicle but did not employ a drug-sniffing canine to inspect the vehicle to further assure it was free of controlled substances.

Madison then proceeded to drive his vehicle to Plaintiff's barbershop, which Madison entered ostensibly to have his hair cut by Plaintiff.  Before cutting Madison's hair, Plaintiff asked Madison to drive Plaintiff to a Wilson Farm convenience store so Plaintiff could purchase some tea.  Madison agreed and drove Plaintiff to the convenience store which Plaintiff entered while Madison waited in Madison's vehicle.  Plaintiff maintains that during the time Plaintiff was in the store and Madison remained in his vehicle, Madison, who was wearing the recording device and wire, relayed false information to Bresser and Griffen, who had followed Madison in an unmarked police vehicle, indicating Madison was purchasing an illegal controlled substance, *i.e.*, cocaine, from Plaintiff.  Griffen maintained he was only partially able to hear the relayed conversations.  Surveillance of Plaintiff and Madison at the Wilson Farm store was also provided by New York State Police Special Investigator Schreiber ("Schreiber"), and Elmira Police Investigator Weed, with Schreiber taking photographs, none of which depict any criminal activity.  Neither Schreiber nor Weed overheard any of the alleged conversation between Plaintiff and Madison.

After Plaintiff returned to the vehicle, Madison drove Plaintiff back to the

9

barbershop[5] and then delivered a bag to Bresser the contents of which Bresser field

tested for cocaine and then sent to the New York State Crime Lab in Olean, New York

("the crime lab"), for further testing to confirm the bag contained cocaine.  The recording

device and wire were removed from Madison by either Bresser or New York State

Police Officer Matthew Lambert ("Lambert"), of the Community Narcotics Enforcement

Team ("CNET") and Bresser transferred the recorded conversations onto a recordable

compact disc ("CD-R").  Lambert also searched Madison following the alleged

controlled drug buy, but observed no criminal activity or contraband.  Plaintiff was never

stopped or searched following the alleged controlled buy to determine if Plaintiff was in

possession of any of the serially recorded cash with which Madison had been provided

by the investigators to give Plaintiff in exchange for the cocaine.[6]

On January 26, 2009, in preparation for another controlled buy from Plaintiff by

Madison, Bresser searched and again fitted Madison with a recording device and wire,

but neither Bresser nor Griffen searched Madison's vehicle nor inspected the vehicle

with the aid of a drug-sniffing canine.  Bressser, driving alone, and another vehicle

containing Griffen and Elmira Police Officer Richard E. Weed ("Weed"), followed

Madison's vehicle to Plaintiff's barbershop.  Bresser admitted that from his parked

vehicle he was unable to view Plaintiff's barbershop.  Madison exited his vehicle and

entered the barbershop to speak with Plaintiff.  Plaintiff, however, was preoccupied with

his barbershop customers and unable to engage in extended conversation with

---

[5] The record does not indicate whether Madison ever had his haircut by Plaintiff.

[6] The record does not indicate whether Madison ever reported to the investigators that he had given the cash to Plaintiff in exchange for the cocaine.

Madison, so Madison left after a brief amount of time and returned to his vehicle. Madison then drove to a private residence on Norton Street in Elmira, followed by Bresser in a separate vehicle and Griffen and Weed in yet another vehicle. Bresser was unable to observe what transpired inside the Norton Street residence. Madison left the Norton Street residence and returned to his vehicle, which Bresser followed to the police station where Madison provided Bresser with a plastic bag containing drugs which Bresser secured and sent to the crime lab for testing. Bresser also transferred the conversation between Madison and Plaintiff captured by the recording device and wire worn by Madison, to a CD-R. Neither Bresser nor Griffen actually observed any criminal activity by Plaintiff at this time. Surveillance for the alleged January 26, 2009 controlled buy was also provided by Elmira Police Captain Joseph Kain ("Kain"), and Investigator Canali ("Canali"), neither of whom observed any criminal activity.

On February 9, 2009, Weed, in preparation for another controlled buy from Plaintiff, searched Madison, fitted him with a recording device and wire, and provided Madison with cash. Madison then visited Plaintiff at Plaintiff's home, located at 375 Norton Street in Elmira, which Plaintiff maintains was unusual because Madison was not someone with whom Plaintiff regularly associated. When Plaintiff inquired as to the reason for Madison's visit, Madison gave a vapid response, and Plaintiff replied he was busy obtaining some equipment for his barbershop business and did not have time to spend with Madison. Although Weed overheard on the wire the conversation between Plaintiff and Madison, Weed did not hear anything of a criminal nature, nor was Weed able to observe Plaintiff's residence. Although Bresser was not involved in the February 9, 2009 controlled buy, Bresser sent the drugs Madison allegedly purchased

11

from Plaintiff during the buy to the Crime Lab.[7]

Plaintiff alleges he was that he "was pulled over immediately after one alleged [controlled drug buy] incident, they did not search me for the buy money, but let me go." Second Amended Complaint ¶ 8.  Plaintiff, however, does not specify after which of the three alleged controlled buys he was stopped or who participated in the stop.

On March 19, 2009, Plaintiff was arrested on the Indictment while inside his barbershop.  Plaintiff was unable to post the amount of bail set and was, therefore, detained in the Chemung County Jail awaiting trial on the Indictment.  On April 8, 2009, Plaintiff moved in connection with the underlying criminal prosecution in Chemung County Court for inspection of the grand jury minutes preliminary to the Indictment and to dismiss the Indictment as legally insufficient.  Chemung County Judge Peter C. Buckley ("Judge Buckley"), examined, pursuant to state law, the minutes of the Grand Jury proceedings and, on April 20, 2009, finding the evidence presented to the Grand Jury legally sufficient to establish the offenses with which Plaintiff was charged in the Indictment, denied Plaintiff's motion to dismiss the Indictment.  Plaintiff remained unable to make the bail originally set upon his arrest on March 19, 2009, and remained detained from March 19, 2009, until September 24, 2009, when Plaintiff's bail was reduced to an amount Plaintiff was able to post.[8]  Plaintiff was tried twice before a jury on the Indictment, with the first trial resulting in a hung jury and the second trial resulting

---

[7] No results for the Crime Lab's analysis of any of the substances allegedly obtained by Madison during the three alleged controlled buys are in the record.

[8] The amount of bail originally set, the amount to which Plaintiff's bail was reduced, or precisely when Plaintiff's bail was reduced is not revealed in the record.

in a jury verdict acquitting Plaintiff on all three charges.[9]

Plaintiff maintains the recording device and wire recordings of the conversations between Plaintiff and Madison are devoid of any dialogue suggesting Plaintiff sold any drugs to Madison.  Nor is there any evidence that the cocaine Madison provided to law enforcement officers following the alleged control buys was ever in Plaintiff's control or possession.  As Plaintiff was not arrested immediately following any of the controlled drug buys, no marked or serially recorded drug buy money provided by Madison was ever seized from Plaintiff.  As such, Plaintiff maintains that the only evidence presented to the grand jury that returned the indictment was Madison's testimony describing the controlled drug purchases, and that Madison falsely informed the police that Plaintiff was a "real drug kingpin" and offered to participate in the controlled buys with Plaintiff with the hope that Madison would, in turn, receive more favorable dispositions on criminal charges for driving while intoxicated ("DWI") pending against Madison in nearby Steuben County.  According to Plaintiff, Madison's license was suspended while the DWI charges were pending, such that Madison's operation of a motor vehicle to visit Plaintiff on January 21, and 26, and February 9, 2009, to make the alleged controlled buys, as well as to travel to give evidence both before the Grand Jury and at Plaintiff's two trials, was in violation of New York's Vehicle and Traffic Law.  Plaintiff attributes his alleged false arrest, imprisonment and malicious prosecution to law enforcement policies and practices Defendants maintain with regard to minorities.  According to Plaintiff, his arrest, imprisonment and prosecution for drug crimes disrupted Plaintiff's

---

[9] The record also fails to indicate the specific dates of Plaintiff's two trials on the Indictment, other than that Plaintiff's second trial commenced on December 1, 2009.

business, drained Plaintiff's financial resources, and caused Plaintiff to lose friends and associates.

## DISCUSSION

Plaintiff asserts four claims for relief, including false arrest and imprisonment, First Claim, disparate treatment, based on his race, by Defendants' drug law enforcement policies and practices with regard to minorities, Second Claim, malicious prosecution, Third Claim, and excessive force, Fourth Claim.  City Defendants and County Defendants seek summary judgment on Plaintiff's First Claim alleging false arrest and imprisonment, Second Claim alleging disparate treatment, and Third Claim asserting malicious prosecution, asserting that the finding of probable cause to arrest Plaintiff in connection with the underlying criminal action negates Plaintiff's claims for false arrest and imprisonment and malicious prosecution.  City Defendants' Memorandum at 3-5; Maggs Affidavit ¶3 (incorporating by reference City Defendants' Memorandum); County Defendants' Motion.  City Defendants and County Defendants also seek to dismiss the Second Amended Complaint insofar as Plaintiff asserts he sustained an unspecified injury to his shoulder intentionally caused by an unidentified law enforcement officer during Plaintiff's arrest on March 19, 2009.  City Defendants' Memorandum at 5; Maggs Affidavit ¶ 3.  City Defendants and County Defendants further seek to dismiss Plaintiff's excessive force claim, alternatively pleaded as asserting common law torts of assault and battery, as time-barred based on the one-year statute of limitations applicable to intentional torts in New York.  City Defendants' Memorandum at 5-6; Maggs Affidavit ¶ 3.  County Defendants also seek summary

judgment insofar as the false imprisonment claim is asserted against Defendant Chemung County Sheriff Christopher Moss ("Moss"), on the basis that Moss's detention of Plaintiff in the Chemung County Jail was only pursuant to Judge Buckley's order when Plaintiff was unable to post bail.  Maggs Affidavit ¶¶ 4-8.   Finally, County Defendants maintain that a typographical error in the September 23, 2010 Order mistakenly orders Plaintiff to redirect his claims against the Elmira City Police Department and its Narcotics Division to Chemung County, rather than the City of Elmira.  Maggs Affidavit ¶¶ 9-13.

In opposition, Plaintiff argues that Judge Buckley's decision denying Plaintiff's motion to dismiss the Indictment "was incorrect" and based on "error of law" and, thus, does not establish that the evidence presented to the Grand Jury was sufficiently competent to support issuance of the Indictment.  Plaintiff's Summary Judgment Response at 2-3.  Plaintiff further maintains that notes taken by Plaintiff's attorney at a February 3, 2011 appearance before the undersigned indicate Plaintiff should sue the County of Chemung, rather than the City of Elmira.  *Id*. at 2.  Plaintiff argues summary judgment should not be granted with regard to his disparate treatment claim because whether or not Plaintiff was targeted by law enforcement officials based on his race, as Plaintiff alleges, is a triable issue of fact.  *Id*. at 3-4.  Plaintiff also maintains, presumably in support of his excessive force claim, that although he cannot identify the individual law enforcement officer responsible for the alleged excessive force, Plaintiff can identify the officer's employer and Plaintiff remains hopeful he will obtain the officer's identity "at some point, even as late as through witnesses at trial."  *Id*. at 4.  Plaintiff denies that his common law intentional torts claim for assault and battery is time-barred because this

action was brought within one-year of the termination of Plaintiff's second criminal trial. *Id*. at 4.  With regard to the false imprisonment claim against Sheriff Moss, Plaintiff asserts that Moss cannot escape liability on this claim by asserting he "was just following orders."  *Id*.

State Defendants seek to dismiss all claims against Lambert and Schreiber for failing to state a cause of action and lack of personal involvement with regard to Plaintiff's claimed false arrest and imprisonment and malicious prosecution, State Defendants' Memorandum at 4-9, Eleventh Amendment immunity divests this court of jurisdiction over the state common law claims against Lambert and Schreiber, *id.* at 9-11, and Plaintiff's Title VII claim can only be maintained against an employer, *id.* at 11-12.  In opposition, Plaintiff argues issues of fact preclude summary judgment on Plaintiff's claim that he was subjected to disparate treatment based on his race. Plaintiff's Response to State Defendants' Motion ¶¶ VI.  Plaintiff argues against dismissal of his Title VII claim because Plaintiff has been the "victim" of intentionally discriminatory employment policies that exclude minorities from employment with various law enforcement agencies on the basis that if the employees of the various law enforcement agencies were "more representative of the population that it [*sic*] served, this kind of incident that [Plaintiff] was a victim of would be less likely."  *Id*. ¶ VIII.  In further support of dismissal, State Defendants argue that Plaintiff has failed to set forth, either in the Second Amended Complaint or in Plaintiff's Response to State Defendants' Motion, any factual or legal basis entitling Plaintiff to relief against State Defendants.  Murphy Declaration ¶ 3.

1.      **Summary Judgment**

Summary judgment on a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a

moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a) and (b);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  The party

moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any

source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.

"Where, as here, the nonmovant bears the burden of proof at trial, the movant may

show prima facie entitlement to summary judgment in one of two ways: (1) the movant

may point to evidence that negates its opponent's claims or (2) the movant may identify

those portions of its opponent's evidence that demonstrate the absence of a genuine

issue of material fact, a tactic that requires identifying evidentiary insufficiency and not

simply denying the opponent's pleadings."  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d

Cir. 2006).

Once a party moving for summary judgment has made a properly supported

showing as to the absence of any genuine issue as to all material facts, the nonmoving

party must, to defeat summary judgment, come forward with evidence that would be

sufficient to support a jury verdict in its favor and "may not simply rely on conclusory

statements or on contentions that the affidavits supporting the motion are not credible."

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995)

(citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).  In the instant case, Plaintiff alleges Defendants violated Plaintiff's rights under the Fourth Amendment by arresting, imprisoning, and maliciously prosecuting Plaintiff without probable cause to believe Plaintiff had engaged in any criminal activity.  First Claim (alleging false arrest and imprisonment), and Third Claim (alleging malicious prosecution).  Plaintiff also asserts he was subjected to disparate treatment, based on his race, by Defendants' policies and practices with regard to

minorities, in violation of the Fourth and Fourteenth Amendments, as well as Title VII of

the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.*  Second Claim.  Finally, insofar

as Plaintiff asserts he was subjected to excessive force during his arrest on March 19,

2009, Fourth Claim, although Plaintiff has not identified the constitutional source for

such claim, allegations of excessive force during arrest are analyzed under the Fourth

Amendment.  *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (noting district

court properly analyzed plaintiff's claim that defendant law enforcement officers used

excessive force in arresting plaintiff under the Fourth Amendment "which prohibits

unreasonable seizures of persons, as opposed to the Fourteenth Amendment, which

guarantees substantive due process.").


### A.    Probable Cause

To prevail on a § 1983 claim against a state actor for false arrest, false

imprisonment, or malicious prosecution, a plaintiff must show a violation of his rights

under the Fourth Amendment, and must also establish the elements of a false arrest,

false imprisonment, or malicious prosecution claim under state law.  *Manganiello v. City*

*of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (malicious prosecution); *Weyant v.*

*Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest); and *Posr v. Doherty*, 944 F.2d 91,

96 (2d Cir. 1991) (false imprisonment).  The existence of probable cause to arrest,

however, is a complete defense to civil rights claims for false arrest, *Weyant* 101 F.3d

at 852 ("The existence of probable cause to arrest constitutes justification and is a

complete defense to an action for false arrest, whether that action is brought under

state law or under § 1983."  (internal quotation marks and citations omitted)), false

imprisonment, *Posr*, 944 F.2d at 96 ("In New York, the tort of false arrest is synonymous with that of false imprisonment."), and malicious prosecution, *Manganiello*, 612 F.3d at 161-62 ("The existence of probable cause is a complete defense to a claim of malicious prosecution in New York." (internal quotation marks and citation omitted)). "Although the existence of probable cause must be determined with reference to the facts of each case, in general '[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Id*. at 161 (quoting *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007)). "Probable cause may also exist where the officer has relied on mistaken information so long as it was reasonable for him to rely on it." *Id*. (citing cases). Nevertheless, "'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Id*. (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)).

"[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon*, 455 N.E.2d at 1251). It is, however, "the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Savino*, 331 F.3d at 73. In the instant case, Plaintiff offers no evidence to rebut the presumption of probable cause created by the Indictment.

Plaintiff repeatedly asserts that he was "framed" by Madison who was looking for

an opportunity to obtain official leniency with regard to some criminal charges or vehicle and traffic violations pending against Madison in Steuben County.  Second Amended Complaint at 3.  According to Plaintiff, although Bresser had no independent basis for believing Madison, Bresser, at the suggesting of another law enforcement officer from Steuben County, accepted hearsay statements made by Madison as a confidential informant in deciding to target Plaintiff for the alleged controlled drug buys. *Id*.  Plaintiff also maintains that after the alleged controlled drug buys, he was never searched to see if Plaintiff were in possession of any of the serially recorded cash with which Madison had been provided to make the buys, even though Plaintiff alleges he was pulled over, but not arrested, immediately following one of the buys, nor were any of the bags of drugs Madison allegedly purchased from Plaintiff ever tested to determine if there were any physical evidence linking the drugs to Plaintiff.  *Id*. at 4-6.  Plaintiff further asserts that Madison and his vehicle were not sufficiently searched to ensure they did not contain any drugs before the buys, nor was Plaintiff searched to see if he were still in possession of any of the marked cash after the buys.  *Id*.  Nor did any of the law enforcement officers personally observe any criminal conduct or hear any incriminating conversation involving Plaintiff.  *Id*.  Rather, the only statements produced before both the Grand Jury and at Plaintiff's trial were Madison's statements which Plaintiff characterizes as "hearsay."  *Id*.

Conjecture and surmise, however, are insufficient to rebut the presumption of probable cause established by the grand jury's indictment.  *Id*. (citing *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)).  It is significant that here, Plaintiff provides no evidence establishing the veracity of any of Plaintiff's statements made in opposition to

summary judgment, such as copies of the relevant portions of the trial transcript.[10]

Moreover, even assuming, *arguendo*, that Madison's statements identifying Plaintiff as

a drug dealer were false, Plaintiff points to nothing creating a triable issue of fact as to

whether any of the law enforcement officers knew such statements were false, yet

continued to proceed as though the statements were true to create the appearance of

probable cause that otherwise would not have existed.  *Compare Manganiello*, 612

F.3d at (holding in context of § 1983 malicious prosecution claim that  issue was for jury

to decide whether detective, in securing grand jury indictment charging plaintiff with

murder, engaged in misconduct rebutting probable cause presumption, by providing

misrepresentation in police reports, failing to investigate certain information exculpatory

to the plaintiff, and coercing false statements from witnesses).  Even assuming, that the

investigators may have been lacking in thoroughness does not support an inference

that the police thereby lacked a reasonable basis to credit Madison's assertions of

Plaintiff's guilt.

---

[10] Plaintiff did attach to the Second Amended Complaint copies of 15 pages of the transcript of testimony ("Tr. at __") given in connection with Plaintiff's prosecution on the Indictment, including 10 pages of cross-examination of Bresser, a single page of direct examination of Griffen, three pages of cross-examination of Griffen, and a single page of cross-examination of Kain.  A thorough review of these pages of testimony, however, fails to establish whether they are from Plaintiff's first or second trial, and the manner in which Plaintiff presents such testimony, including that many of the pages are not in order and the limited selections of testimony, further undermines the strength of Plaintiff's assertion that the only evidence from which the grand jury could conclude Plaintiff had engaged in the three asserted controlled drug buys was Madison's own testimony.  In other words, although within the limited testimony there are references to an inability by law enforcement officers to clearly hear conversations captured by the recording device and wire, or to clearly observe Plaintiff's interaction with Madison, it is not at all clear from the record what testimony may have been provided by other witnesses, nor even whether all the limited testimony refers to the same controlled drug buy.  Moreover, even given the most liberal construction of the transcript portions fails to demonstrate there exists an open question of fact as to whether Madison's testimony before the grand jury, without more, was insufficient to establish the requisite probable cause for the Indictment.  For example, that Defendant Griffen testified that although his "department" has a "drug sniffing dog," Griffen did not use the dog to search Plaintiff's vehicle, Tr. at 222, simply fails to call into question the veracity of Madison's statements before the grand jury regarding what transpired between Madison and Plaintiff during the alleged controlled drug buys.

Nor has Plaintiff attempted to establish, pursuant to Fed.R.Civ.P. 56(d), that he is in need of further discovery to enable Plaintiff to present facts necessary to oppose summary judgment.  As such, in the absence of any evidence corroborating any of Plaintiff's arguments proffered to rebut the presumption of probable cause created by the Indictment, summary judgment of Plaintiff's First and Third Claims should be GRANTED.

### B.      Disparate Treatment/Selective Enforcement

Plaintiff's Second Claim alleges Defendants targeted Plaintiff, based on his arrest, for the arrest, imprisonment and prosecution on the Indictment.  Second Amended Complaint ¶¶ 56-57.  Plaintiff's Second Claim is predicated on Title VII, New York's Human Rights Law, various international treaties, and the Fourteenth Amendment's Equal Protection Clause.

### 1.      Title VII and New York State Human Rights Law

Plaintiff, in his Second Claim, asserts that Defendants targeted Plaintiff for the alleged controlled drug buys, the arrest, and criminal prosecution because of Plaintiff's race, thereby subjecting Plaintiff to race-based disparate treatment in violation of Title VII and New York State's Human Rights Law.  Second Amended Complaint ¶¶ 56-57. City Defendants and County Defendants assert in opposition that probable cause supporting the Indictment renders Plaintiff's disparate treatment claim without merit. City Defendants' Memorandum at 3-4; Maggs Affidavit ¶3 (incorporating by reference City Defendants' Memorandum).  In opposition to Defendants' Motions, Plaintiff argues

that whether Plaintiff was subjected to disparate treatment is an issue of fact that cannot be decided on summary judgment.  Plaintiff's Summary Judgment Response at 3-4.

Title VII employment discrimination claims are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  In particular, the plaintiff must first make out a *prima facie* case of discriminatory failure to hire, adverse employment action, or retaliation.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir.  2010) (Title VII failure to hire claim); *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000) (Title VII adverse employment action claim); and *Mack v. Otis Elevator Co.*, 326 F.3d 11, 129 (2d Cir. 2003) (Title VII retaliation claim).  Once the plaintiff has made the requisite *prima facie* showing, the burden shifts to the employer to provide a nondiscriminatory reason for the employment decision.  *Vivenzio*, 611 F.3d 106 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).  If the employer is able to articulate such a reason, the burden shifts back to the plaintiff to establish, by admissible evidence, that the proffered reason is mere pretext for an impermissible motivation.  *Id*.  "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id*. (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In the instant case, because Plaintiff is neither an employee of, nor an applicant for employment with, any Defendant in this action, Plaintiff cannot establish he has suffered any prejudice in seeking employment, in the terms of his employment, or in retaliation with regard to his employment as necessary to establish any Title VII

violation; rather, Plaintiff is without standing to assert his Title VII claim.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 572 (2d Cir. 2000) (holding employee plaintiff who failed to demonstrate her employment had been affected in any way by her employer's preference for blonde, fair-skinned employees lacked standing to assert Title VII claim). Further, insofar as Plaintiff also brings his race-based disparate treatment claim under New York's Human Rights Law, New York Executive Law § 296, such claim "is analyzed according to the identical standards as the Title VII claim."  *Weinstock*, 224 F.3d at 42 n. 1.  Accordingly, Plaintiff also is unable to establish any *prima facie* case of discrimination in the context of employment or seeking employment under New York's Human Rights Law.

Summary judgment on Plaintiff's Second Claim should be GRANTED in favor of all Defendants.


### 2.    International Treaties

Plaintiff also asserts his Second Claim alleging disparate treatment pursuant to international treaties, including the International Covenant on Economic, Social and Cultural Rights ("ICESCR"), the Universal Declaration of Human Rights ("UDHR"), and the International Covenant on Civil and Political Rights ("ICCPR").  Second Amended Complaint ¶ 57.  Although City and County Defendants have moved for summary judgment on this claim, no specific argument addressing Plaintiff's treaties' theory is provided.

Ratified treaties are to be regarded as "the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  Nevertheless, "treaties do not generally create rights that are

privately enforceable in the federal courts." *United States v. Li*, 206 F.3d 56, 60 (1st Cir.

2000).  Rather,

> A treaty is primarily a compact between independent nations.  It depends for the
> enforcement of its provisions on the interest and the honor of the governments
> which are parties to it.  If these fail, its infraction becomes the subject of
> international negotiations and reclamation, so far as the injured parties choose to
> seek redress . . . . It is obvious that with all this the judicial courts have nothing to
> do and can give no redress.

*Li*, 206 F.3d at 60-61 (quoting *Head Money Cases*, 112 U.S. 580, 598 (1884)).

> Indeed, even where a treaty provides certain benefits for nationals of a particular
> state . . . it is traditionally held that "any rights arising out of such provisions are,
> under international law, those of the state and . . . individual rights are only
> derivative through the states."

*U.S. ex rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir. 1975) (quoting Restatement
(Second) of the Foreign Relations Law of the United States § 115, comment e (1965)).

Moreover,

> Even when treaties are self-executing in the sense that the create federal law,
> the background presumption is that "[i]nternational agreements, even those
> directly benefiting private persons, generally do not create private rights or
> provide for a private cause of action in domestic courts."

*Medellin v. Texas*, 552 U.S. 491, 506 n.  3 (U.S. 2008) (quoting 2 Restatement (Third)
of Foreign Relations Law of the United States § 907, Comment *a*, p.  395 (1986)).

"In sum, while treaties 'may comprise international commitments . . . they are not

domestic law unless Congress has either enacted implementing statutes or the treaty

itself conveys an intention that it be 'self-executing' and is ratified on these terms.'"

*Medellin*, 552 U.S. at 505 (quoting *Igartua-De La Rosa v. United States*, 417 F.3d 145,

150 (1st Cir.  2005)).

It is significant that here, none of the three treaties on which Plaintiff relies in

support of his claims is self-executing or otherwise intended to be binding on the

signatories or member States of the United Nations.  *See e.g.*, *Elie v. Holder*, 443

Fed.Appx. 635, 635 (2d Cir. 2011) ("The UDHR is 'merely aspirational and [was] never

intended to be binding on member States of the United Nations.'" (quoting *Flores v.*

*Southern Peru Copper Corp.*, 414 F.3d 233, 259 & n. 36 (2d Cir. 2003)); *Flores*, 414

F.3d at 258 (holding the ICESCR would only apply to actions by the State Parties

because the ICESCR "does not profess to govern the conduct of private actors . . . .");

and *United States v. Duarte-Acero*, 208 F.3d 1282, 1284 n. 8 (11th Cir. 2000) (noting

ICCPR is not self-executing (citing 138 Cong. Rec. S4781, S4783 (daily ed. Apr. 2,

1992)).  Nor has the court's research revealed any Congressional action permitting

these treaties to "function as binding federal law."  *Medellin*, 552 U.S. at 504.

Accordingly, the international treaties Plaintiff cites in support of his Second

Claim provide no private cause of action, and summary judgment on such claim should

be GRANTED.

### 3.    Fourteenth Amendment Equal Protection

Insofar as Plaintiff's Second Claim asserts a violation of the Fourteenth

Amendment, Plaintiff is essentially alleging a claim for selective enforcement based on

impermissible race considerations.  Second Amended Complaint ¶ 57.  Although City

and County Defendants have moved for summary judgment on this claim, no

Defendant makes any specific argument in support of summary judgment on this theory

of Plaintiff's disparate treatment claim on which Plaintiff has the ultimate burden of

proving.

"The Equal Protection Clause of the Fourteenth Amendment commands that no

State shall 'deny to any person within its jurisdiction the equal protection of the laws,'
which is essentially a direction that all persons similarly situated should be treated
alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)
(quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "The requirements for a selective-
prosecution claim draw on 'ordinary equal protection standards.'"  *United States v.
Armstrong*, 517 U.S. 456, 465 (U.S. 1996) (quoting *Wayte v. United States*, 470 U.S.
598, 608 (1985)).  In particular, the plaintiff must demonstrate the subject "prosecutorial
policy 'has a discriminatory effect and that it was motivated by a discriminatory
purpose.'"  *Id*.  "To establish discriminatory effect in a race case, the claimant must
show that similarly situated individuals of a different race were not prosecuted." *Id*. at
465.  As such, Plaintiff must first demonstrate he was treated differently from other
similarly-situated individuals.  *Church of the American Knights of the Ku Klux Klan v.
Kerik*, 356 F.3d 197, 210 (2d Cir. 2004).

In opposing summary judgment, Plaintiff must present evidence comparing
himself to individuals who are "similarly situated in all material respects," but who
nonetheless were subjected to different treatment than Plaintiff.  *Graham v. Long Island
Rail Road*, 230 F.3d 34, 39 (2d Cir. 2000).  *See also Kerik*, 356 F.3d at 210 ("A
selective enforcement claim requires, as a threshold matter, a showing that the plaintiff
was treated differently compared to others similarly situated." (citing *Giordano v. City of
New York*, 274 F.3d 740, 70-51 (2d Cir. 2001)).  Moreover, when attempting to prove
selective enforcement on the basis of race, a plaintiff "'must show that similarly situated
individuals of a different race were not [subjected to the same alleged offensive
conduct].'"  *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000).

Whether individuals are similarly situated is generally an issue of fact to be submitted to the jury, although this rule is not absolute and summary judgment may be granted "where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Associates v. Incorporated Village of Mineola*, 273 F.3d 494, 499 n. 2 (2d Cir. 2001).

In the instant case, Plaintiff has utterly failed to make any showing tending to establish that Plaintiff was subjected to any disparate treatment based on his race. Rather, Plaintiff's argument on this point consists solely of conclusory statements that Defendants' decision to arrest and prosecute him were predicated on the fact that Plaintiff is an African-American without any assertion that Caucasian suspects in similar circumstances were not prosecuted.  Absent some evidence demonstrating the existence of some issue of fact for consideration by the jury, summary judgment on this claim should be GRANTED in favor of City and County Defendants.

**2.      Failure to State a Claim**

Although City and County Defendants have moved for summary judgment on the First, Second and Third Claims, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim is sought City and County Defendants with regard to the Fourth Claim, and by State Defendants Lambert and Schreiber on all claims.  In particular, City and County Defendants argue Plaintiff has failed to identify the tortfeasor who allegedly subjected Plaintiff to excessive force, injuring Plaintiff's shoulder, in the course of Plaintiff's March 19, 2009 arrest.  City Defendants' Memorandum at 5; Maggs Affidavit ¶ 3.  State Defendants maintain Plaintiff has failed to allege, other than stating in general

and conclusory terms, how either State Defendant personally committed any

constitutional or other federal violation against Plaintiff.  State Defendants'

Memorandum at 2.  In opposition, Plaintiff maintains that he has sufficiently articulated

how each Defendant participated in each of the alleged violations of constitutional and

federal law.  Plaintiff's Opposition to State Defendants' Motion ¶ VII.  Plaintiff further

maintains that although he is unable to specifically identify each of the tortfeasors

responsible for each of Plaintiff's claims for relief, Plaintiff hopes to be able to make the

requisite identifications at trial.  *Id*. ¶ VII.

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of

the complaint and is required to accept the plaintiff's allegations as true and to construe

those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416

U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is

required to liberally construe the complaint, accept as true all factual allegations in the

complaint, and draw all reasonable inferences in the plaintiff's favor).  Two recent

Supreme Court cases require application of "a 'plausibility standard,' which is guided by

'[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S.

662, ___, 129 S.Ct. 1937, 1949 (2009)).  "First, although 'a court must accept as true all

of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal

conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*,

129 S.Ct. at 1949).  "'Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the review court to draw

on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950).

Despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint.

*Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting

*Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be enough

to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.


### A.    False Arrest, False Imprisonment, and Malicious Prosecution

State Defendants argue that Plaintiff fails to state a claim for false arrest, false

imprisonment pending trial, and malicious prosecution because the presumption of

probable cause provided by the Indictment defeats a such claims under both § 1983

and New York common law, State Defendants' Memorandum at 4-5.  Plaintiff's

response filed in opposition to State Defendants' Motion does not specifically address

this argument of State Defendants,  *see* Plaintiff's Response to State Defendants'

Motion, *passim*, and is characterized by State Defendants as "unsupported legal

conclusions, deductions, and opinions" which State Defendants urge "should not be

given a presumption of truthfulness."  Murphy Declaration ¶ 3.

As discussed in connection with City and County Defendants' Motions,

Discussion, *supra*, at 19-22, an absence of probable cause is an element of Plaintiff's

claims for false arrest, unlawful imprisonment pending trial, and malicious prosecution.

Further, the Indictment creates a presumption of probable cause supporting Plaintiff's arrest, imprisonment pending trial, and prosecution, which Plaintiff has failed to rebut in response to summary judgment. *Id*.  The determination that Plaintiff is unable on summary judgment to rebut the presumption of probable cause supporting Plaintiff's arrest, imprisonment pending trial, and prosecution on the Indictment, also establishes that Plaintiff is unable to establish a required element of such claims, *i.e.*, the absence of probable cause for his arrest and prosecution.  *Id*.  Accordingly, State Defendants' Motion should be GRANTED insofar as Plaintiff asserts claims for false arrest, false imprisonment, and malicious prosecution because the Indictment provides probable cause which, unrebutted by Plaintiff, defeats such claims.

### B.     Personal Involvement

City and County Defendants move for dismissal of the Fourth Claim asserting excessive force on the basis that Plaintiff has not identified the tortfeasor who allegedly applied excessive force in arresting Plaintiff on March 19, 2009.  City Defendants' Memorandum at 5; Maggs Affidavit ¶ 3.  State Defendants seek to dismiss all claims against them because Plaintiff has failed to allege that either Defendant Lambert or Schreiber was personally involved in the asserted constitutional deprivations, and neither is alleged to have acted in any supervisory role in connection with any of Plaintiff's claimed deprivations.  State Defendants' Memorandum at 7-9.  In opposition, Plaintiff asserts that he hopes to be able to identify which Defendants participated in which alleged constitutional deprivation by the time of trial.  Plaintiff's Summary Judgment Response ¶ VIII; Plaintiff's Response to State Defendants' Motion ¶ X.

Plaintiff's failure to assert any allegations establishing which, if any, Defendants were personally involved in the claimed constitutional deprivations is significant because personal involvement of the defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). For example, Plaintiff's only allegations as to his Fourth Claim for excessive force in violation of his civil rights and New York common law is that Plaintiff was subjected to excessive force when he was "arrested with unnecessary violence, with intentional injury to my shoulder and other parts of my person by the arresting officer. . . ", Second Amended Complaint ¶ 10, and that "[t]he police use of 'excessive force' . . . caused [Plaintiff] injuries, physical and psychological. *Id*. ¶ 60. Such allegations are insufficient to provide the requisite notice to Defendants to allow them to prepare a defense to present at trial.

Furthermore, insofar as any allegation can be construed as alleging either Defendant had any supervisory authority over any other Defendant, that fact alone, without more, is also insufficient to demonstrate liability for failure to supervise under § 1983. *Richardson*, 347 F.3d at 435. As such, Plaintiff's failure to specify by what actions any Defendant violated Plaintiff's civil rights is also fatal to his §1983 claims, and City Defendants' Motion, County Defendants' Motion, and State Defendants' Motion should all be GRANTED as to Plaintiff's Fourth Claim.

### C.    Eleventh Amendment Immunity

State Defendants assert that Plaintiff's state law common law claims for false arrest, malicious prosecution, and assault and battery are subject to dismissal pursuant

to the Eleventh Amendment.  State Defendants' Memorandum at 9-11.  Plaintiff has not responded to this argument.

The Eleventh Amendment states, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by the citizens or subjects of any foreign state."  U.S. CONST. amend XI.  "[T]he Supreme Court has interpreted the Eleventh Amendment to extend to suits by all persons against a state in federal court."  *Mancuso v. New York State Thruway Authority*, 86 F.3d 289, 292 (2d Cir. 1996)  (quoting *Hans v. Louisiana*, 134 U.S. 1, 10-11 (1890)).  This proscription extends to suits based on constitutional violations for money damages against individuals acting in their official state capacities.  *Davis v. New York*, 316 F.3d 93, 101 (2d Cir.  2002) (holding inmate plaintiff's claims for damages against all individual DOCS employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  Because "neither a state nor its officials acting in their official capacities are 'persons' under § 1983," they are not subject to liability for deprivations of constitutional rights under that statute.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).

Nor may a federal court's grant of injunctive relief against a state official in his official capacity be based on a violation of state law.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984).  Furthermore, a plaintiff may not rely on pendent jurisdiction to avoid the immunity provided by the Eleventh Amendment.  *Id*. at 121 ("a claim that state officials violated state law in carrying out their official

responsibilities is a claim against the State that is protected by the Eleventh Amendment.  We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.").

Accordingly, the immunity provided by the Eleventh Amendment deprives this court of any jurisdiction over Plaintiff's state law claims asserted against State Defendants.  State Defendants' Motion should thus be GRANTED on this ground.

### D.    Title VII and New York State Human Rights Law

State Defendants assert that because Title VII claims may only be brought against an employer entity, Plaintiff, who was not employed by or seeking employment with any of the entities sued, cannot obtain any relief for his asserted disparate treatment under Title VII.  State Defendants' Memorandum at 11-12.  In opposition, Plaintiff argues that even though Plaintiff is not an employee or job applicant, the alleged disparate treatment to which Plaintiff was subjected by Defendants demonstrate Plaintiff has been victimized in violation of both Title VII's prohibition against intentional discrimination as well as the discriminatory application of neutral job policies.  Plaintiff's Response to State Defendants' Motion ¶ VIII.  State Defendants assert in further support of their motion that Plaintiff has not provided any legal basis for liability under Title VII outside the employment context.  Murphy Declaration ¶ 10.

As discussed above in connection with City and County Defendants' Motions seeking summary judgment, the first requirement under the *McDonnell Douglas* burden shifting analysis applicable to Title VII employment discrimination claims is that the Plaintiff establish a *prima facie* case of discrimination.  Discussion, *supra*, at 22-23.

The precise elements of such *prima facie* case depends on the specific type of employment discrimination alleged.

A *prima facie* case for a discriminatory failure to hire claim requires the plaintiff demonstrate that "(1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Vivenzio*, 611 F.3d at 106 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). Similarly, where a Title VII claim is based on an adverse employment decision, the *prima facie* case requires the plaintiff demonstrate (1) he is a member of a protected class, (2) he is qualified for his position, (3) he suffered an adverse employment action, and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Weinstock*, 224 F.3d at 42 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). Finally, a *prima facie* case of discrimination in the retaliation context requires the plaintiff demonstrate (1) he was engaged in activity protected under Title VII, (2) the employer was aware of the plaintiff's participation in the protected activity, (3) the employer took adverse employment action against the plaintiff, and (4) a causal connection between the plaintiff's participation in the protected activity and the employer's adverse employment action. *Mack*, 326 F.3d at 129 (citing *Gordon v. New York City Board of Education*, 232 F.3d 111, 116 (2d Cir. 2000)).

In the instant case, however, because Plaintiff is neither an employee of, nor an applicant for employment with, any of the Defendants, Plaintiff is without standing to assert a claim under Title VII. Likewise, because employment discrimination claims under New York's Human Rights Law, New York Executive Law § 296, are "analyzed

according to the identical standards as the Title VII claim," *Weinstock*, 224 F.3d at 42 n. 1, Plaintiff has also failed to plead against State Defendants any *prima facie* case of discrimination in the context of employment or seeking employment under New York's Human Rights Law.

Accordingly, insofar as Plaintiff alleges disparate treatment claim is based on employment discrimination, State Defendants' Motion should be GRANTED.

**3.      Failure to Serve Defendants**

The court observes that Plaintiff has named several others as Defendants who have not appeared in this action, including State of New York, William Bresser, David Topping, and Investigator Ordway.  The docket fails to establish that such putative defendants were ever served, and the 120-day period of time provided by Fed.R.Civ.P. 4(m) in which to serve after filing the Second Amended Complaint on April 5, 2011 has expired.  Nor has Plaintiff requested an extension of the time to serve for good cause. Because the undersigned is recommending dismissing the Second Amended Complaint in its entirely as to all moving defendants, including on summary judgment as to City and County Defendants on the First, Second and Third Claims, and for failing to state a claim as to State Defendants on all claims, and as to City and County Defendants on the Fourth Claim, the undersigned has also considered recommending dismissal of the Second Amended Complaint as to the remaining non-moving defendants based on Plaintiff's failure to timely effect service.

"Rule 4(m) requires that the district court provide notice to a plaintiff before dismissing an action *sua sponte* for failure to timely serve the defendant."  *Nagy v.*

*Dwyer*, 507 F.3d 161, 164 (2d Cir. 2007) (citing Fed.R.Civ.P. 4(m)).  The district court's "failure to provide notice pursuant to Rule 4(m) can constitute an abuse of discretion or error of law where the absence of notice forestalled a plaintiff from making a colorable argument that there was good cause to extend the 120-day period in which service was due." *Id*. (citing *Thompson v. Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002)). Nevertheless, here, the action should also be dismissed against the non-served defendants because the claims asserted against the unserved named defendants would be subject to dismissal or summary judgment for the same reasons discussed throughout this Report and Recommendation.  *See McCracken v. R.E. Ginna Nuclear Power Plant*, LLC, 2919 WL 1404115, * 2 (W.D.N.Y. Mar.  31, 2010) (dismissing action, *sua sponte*, for failure to effect timely service where the action was deemed "frivolous").

Dismissal under § 1915 is permitted where the district court determined that action (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relied. 28 U.S.C. § 1915(e)(2)(B).  A district court has the inherent authority to *sua sponte* dismiss an action as frivolous or for failing to state a claim, regardless of whether the plaintiff has been granted leave to proceed *in forma pauperis*.  *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (dismissing, *sua sponte*, complaint filed by *pro se* plaintiff who had paid filing fee where, given the frivolous nature of complaint, dismissal would have been mandatory under 28 U.S.C. § 1915(e)(2) ("§ 1915") had plaintiff sought to proceed *in forma pauperis*).

Here, State Defendants assert that the State of New York was not served and, in any event, the State of New York is immune from actions in federal court alleging civil

rights violations.  State Defendants' Memorandum at 2, n. 1 (citing cases).  Although

Plaintiff identifies Defendant Bresser as an Elmira Police employee, the attorney for the

City Defendants, Gerard E. O'Connor, Esq., has not acknowledged service on Bresser.

Further, although City Defendants' attorney, Gerard E. O'Connor, Esq., avers that

Defendants Griffen, Weed, Kain and Investigator Canali have not been served with the

Second Amended Complaint, the first complaint in which such Defendants are named,

and has moved for summary judgment on behalf of such defendants, summary

judgment is not requested with regard to Bresser.  O'Connor Affidavit ¶ 1.  The only

plausible explanations for why the City Defendant's Motion was not also filed on behalf

of Bresser is either oversight by O'Connor, or that Bresser is not, despite Plaintiff's

allegations to the contrary, an Elmira Police employee.  Nor does Plaintiff identify the

employers of Topping or Ordway.

Given the complete lack of viability to any of Plaintiff's claims, *sua sponte*

dismissal of such claims against the non-served named defendants would not be an

abuse of discretion.

## **CONCLUSION**

Based on the foregoing, City Defendants' Motion (Doc. No. 18) should be GRANTED; County's Motion (Doc. No. 19), should be DISMISSED as moot; County Defendants' Motion (Doc. No. 23), should be GRANTED, State Defendants' Motion (Doc.  No.  27), should be GRANTED; and the court should, sua sponte, dismiss the action against the non-moving named defendants based on Plaintiff's failure to timely effect service.  The Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 2, 2012
                    Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 2, 2012
            Buffalo, New York